Janet **MASSEY**, George Walker as Personal Representative of the Estate of Hugh Massey, and the Law Offices of Windle Turley, P.C., Appellants,

v.

Linda Jo **GALVAN** as Guardian and Next Friend of Hugh Richard Massey III and Gareld Paul Massey, Minors, and La Marque Independent School District, Appellees.

No. B14–90–01070–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 2, 1992.

Rehearing Denied Feb. 6, 1992.

Michael J. Whitten, David D. Garcia, Curtis M. Loveless, Denton, Ann McClure, El Paso, Simone S. Leavenworth, Texas City, C.G. Dibrell, II, Galveston, for appellees.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a judgment apportioning settlement funds between appellant Janet Massey and two minors, Hugh Richard Massey III and Gareld Paul Massey. The trial court ordered the $1.4 million dollar settlement be apportioned between the parties on the basis of 35% to Janet Massey and 65% to the minors. We affirm the judgment of the trial court.

On December 4, 1986, Hugh Massey was killed in a car-truck collision in Galveston County, Texas. Mr. Massey was survived by his wife, Janet Massey, and two minor sons from a previous marriage. Linda Jo Galvan is the natural mother of the minors and the ex-wife of Mr. Massey. On December 23, 1986, Janet Massey employed the Law Offices of Windle Turley, P.C. (LOWT) to represent her and the children in a wrongful death suit based on the collision. In January of 1987, Linda Jo Galvan relinquished her guardianship rights to the children in the probate court. The wrongful death suit was filed in February of 1987. In March, the probate court formally appointed Janet Massey as guardian of the estates of the minor children. In April of that year, a defendant in the wrongful death suit, Jamail, Inc., offered to pay $1.5 million to settle its portion of the suit.[1] This offer was accepted by Windle Turley on behalf of Janet Massey and the children. The settlement was confirmed by the attorney for Jamail, Inc. On October 2, 1987, the probate court removed Janet Massey as guardian of the estates of the children and named Linda Jo Galvan, the natural mother, as the successor. Mrs. Galvan employed new counsel for the children. This attorney, David Whitten, contacted Mr.

David R. Weiner, Dallas, for appellants.

---

1. Of this $1.5 million, $100,000 was paid to Mr. Massey's mother. The remaining $1.4 million was to be divided between Janet Massey and the minor children.

Turley and informed him that LOWT's services on behalf of the children were no longer required. Mrs. Galvan believed Mr. Turley was not acting in the best interest of the children, but rather was acting in the interest of Mrs. Massey.

During 1988, Mr. Turley and Mr. Whitten communicated on behalf of their clients concerning the apportionment of the settlement funds. Mr. Turley proposed that the issue be submitted to arbitration. Each attorney appointed an arbitrator and the two appointees selected a third member for the arbitration panel. The parties submitted position statements to the arbitration panel. On January 4, 1989, the trial court entered a final judgment pursuant to the $1.4 million settlement with Jamail, Inc. The court did not make any decision concerning apportionment because the parties represented to the court that the matter was currently before the arbitration panel. On January 17, 1989, the arbitration panel delivered an award. The panel awarded one-third of the $1.4 million to Janet Massey and two-thirds to the minors. However, since the parties had previously agreed that neither Janet Massey nor the two minors jointly could receive more than 65% of the $1.4 million, the percentages were dropped to 65% and 35%. This was virtually in line with the arbitrators original decision. Linda Jo Galvan moved to have the court accept the decision by the arbitrators and apportion the settlement funds accordingly. Mrs. Massey contested this motion arguing the parties never had an agreement to arbitrate and that even if there was such an agreement, it did not comply with TEX.R.CIV.P. 11 and was therefore unenforceable. Mrs. Massey further argued that she had never waived her right to a jury trial on the issue of apportionment. On June 8, 1989, the trial court signed an order apportioning the money in accordance with the decision made by the arbitration panel. The court found the parties had entered into a binding arbitration agreement and had thereby waived any right to a jury trial. The court stated TEX.R.CIV.P. 11 did not preclude enforcement of the agreement. Janet Massey contends in this appeal that the trial court erred in entering this order.

On June 19, 1989; a hearing was held on LOWT's application for attorney's fees. In this application LOWT sought to enforce the contract made by Janet Massey on behalf of the minors procuring his representation in the wrongful death suit. In August, the trial court denied the application. LOWT appeals from that decision.

The trial court's order of June 8, 1989, also apportioned attorney's fees between LOWT and the attorney for La Marque Independent School District, Mr. Massey's employer, out of the La Marque's worker's compensation subrogation recovery. In this appeal, LOWT appeals this division.

On August 17, 1989, the trial court severed the settlement issues from the underlying personal injury suit. Appellants timely perfected this appeal.

■ The first question we must decide concerns appellees' Supplemental Motion to Dismiss for Want of Jurisdiction. This court decided this motion should be carried with the case and decided at the time of review of the main appeal. Appellees' original Motion to Dismiss for Want of Jurisdiction was denied by this court on April 4, 1991. Therefore, we need only consider any new grounds in the supplemental motion. The supplemental motion contains only one new ground for dismissal. Appellees argue this appeal should be dismissed because the appeal bond was signed by appellants' attorney on appeal, David R. Weiner, "as principal" when under TEX. R.APP.P. 46(a) the party appealing is required to be the principal on the bond.

Appellees have mischaracterized the capacity in which appellants' attorney signed the appeal bond. We have studied the appeal bond and find that Mr. Weiner signed on behalf of appellants. While Mr. Weiner did sign on the line designated for the principal's signature, typewritten above Mr. Weiner's signature is the phrase "David R. Weiner, Attorney for Janet Massey, et al.." An appellant's attorney has authority to execute the bond on behalf of the appellant. *See Jefferies v. Davis*, 759 S.W.2d 6, 8 (Tex.App.—Corpus Christi

1988) (signature of party's attorney "for" party functions as party's signature), *writ denied per curiam*, 764 S.W.2d 559 (Tex. 1989). Appellees correctly maintain that Tex.R.App.P. 46(a) requires that the party appealing must be named in the bond and must execute the bond as principal or must have the bond executed by someone having legal authority to act for him. *See Mann v. Franklin Federal Bancorp.*, 796 S.W.2d 318 (Tex.App.—Austin 1990, no writ) (emphasis supplied). That is exactly what appellants did in this case; they had their attorney, one with legal authority to act for them, execute the bond on their behalf. The other cases cited by appellees are cases where a non-party was named as the principal, not a case as here where the attorney signs on behalf of his client in an agency capacity. The signature in this case is clearly intended to bind appellants. Appellees' motion is denied.

■ In their second and third points of error appellants allege the trial court erred in finding that the parties, Janet Massey and the minor children, entered into an enforceable agreement to arbitrate and an enforceable settlement agreement pursuant to the award rendered by the arbitration panel.

The evidence in the record reflects that before June 7, 1988, the parties had verbally agreed to submit the apportionment issue to arbitration. This fact is borne out by a letter written by Windle Turley, counsel for Janet Massey, to David Whitten, counsel for the minors, on June 7, 1988, which reads in pertinent part:

> Pursuant to our agreement previously reached, I have asked for Dallas District Judge Harlan Martin to serve as an arbitrator to advise us on a division of the $1.4 Million between our respective clients. He has agreed to serve, and I have advised him that after you have made your selection, that he and your nominee will select the third arbiter.

That this arbitration was to be binding rather than simply advisory is clear. As early as December of 1987, Mr. Turley urged that a private resolution would be in the best interest of all parties. In a December 1987 letter to Mr. Whitten, Mr. Turley wrote:

> By submitting the matter to a couple of local attorneys and/or former judges, we can resolve it privately and just as quickly without all of the adverse impacts of a public hearing.

(emphasis supplied) Webster's New Collegiate Dictionary in defining "resolve" states: to deal with successfully; clear up <doubts> <a dispute>; to find an answer to; to reach a firm decision about; determine. Mr. Turley's word choice makes it clear that he and his client desired this potential arbitration to take the place of any public hearing and to finally decide the allocation issue.

■ Then on June 8, 1988, Mr. Turley sent Mr. Whitten another letter which set out in detail the terms and provisions of the arbitration agreement. Specifically, the letter provided that the parties had agreed to accept the findings of the arbitrators, subject to the 65%–35% limitation, and to recommend those findings to the district court, the probate court and the guardian ad litem for approval. At the close of the letter, Mr. Turley wrote: "If the above summary correctly outlines our agreement will you please sign a copy of this agreement on behalf of your client and return it to me for my file." Appellants now contend this required Mr. Whitten to sign the letter in order to accept the offer to arbitrate. In their brief appellants state: "This offer to enter into an arbitration agreement specifically called for Appellee Galvan's counsel to accept the offer by signing the letter and returning it to counsel for Appellant Massey." Appellants argue that since Mr. Whitten did not sign and return the letter, there is no agreement to arbitrate because under contract principles, when an offer is conditioned upon a specific form of acceptance, acceptance must occur in that form or there is no agreement. The RESTATEMENT, CONTRACTS 2d § 60 (1981) states:

> If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract. If an offer merely

suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded.

First, we do not read the request in the letter as a call for a specific form of acceptance. The letter simply asks Mr. Whitten to acknowledge that Mr. Turley has correctly outlined the previous agreement. At most it is merely a suggestion as to a manner of acceptance. Thus, under the second part of § 60, another method of acceptance was not precluded. Second, Mr. Turley's own letters sent on behalf of Janet Massey make it clear that prior to the time the June 8 letter was written, the parties had already verbally agreed to arbitrate. We will not allow appellants to distort the plain meaning of their own words and now twist them to their advantage.

Again in July of 1988, Mr. Turley, complaining about the actions of the guardian ad litem in requesting production from Janet Massey, wrote to Mr. Whitten: "Pursuant to our agreement, I thought we were going to handle all of this in our little arbitration proceeding." In September, Mr. Whitten forwarded the position statement of the minors to the arbitration panel. In that position statement Mr. Whitten requested that the arbitrators make a reasonable distribution of the settlement proceeds, subject to the approval of the court. A copy of this position statement was sent to Mr. Turley and he acknowledged receiving it. He made no objection. In October, Mr. Turley again wrote to Mr. Whitten stating "... that on June 8, 1988, we agreed that neither Mrs. Massey nor the two boys together should receive more than 65 percent of any allocation recommended by the arbiters, nor less than 35 percent." This was one of the terms laid out in the letter of June 8, 1988. Mr. Whitten responded to this letter with a letter and stated he had agreed to submit the matter to arbitration and he could not understand why Mr. Turley had not yet forwarded a position statement to the arbitrators on behalf of Janet Massey.

When Mr. Turley did submit a position statement to the arbitration panel, the statement asserted that the parties agreed on June 8, 1988, to submit the dispute over the division of the settlement funds to arbitration. By December of 1988, the arbitration panel had copies of both position statements and began the decision-making process.

On January 4, 1989, at the hearing where the order was signed officially accepting the settlement offered by Jamail, Inc., Mrs. Galvan testified. In her testimony Mrs. Galvan told the court that the apportionment issue was currently pending with the arbitrators and that when the panel had reached a decision, that decision would be brought to the court for approval. Mr. David Kern, an associate of Mr. Turley's, was at this hearing but at no time did he represent to the court that this was not the agreement of the parties, nor did he cross-examine Mrs. Galvan. On this same date, the attorneys for Janet Massey filed a Response to Linda Jo Galvan's Motion to Approve Settlement in the probate court. While it is unclear whether this document was ever admitted into evidence in any hearing, at the Hearing on Motion to Disqualify, Mr. Kern was cross-examined by Mr. Whitten and during the course of the cross-examination, Mr. Whitten read from this document. No objection was made. The portion of the document read by Mr. Whitten stated:

> The Plaintiffs have agreed that after the panel rules the Plaintiffs will then submit the arbitrators allocation ruling to the Court for approval.

Mr. Kern agreed that what was read was the substance of what was in the document, i.e. the response filed on behalf of Janet Massey. This is a clear admission by the appellants that there was an agreement to arbitrate and that the parties agreed to submit the arbitration panel's decision to the courts for approval.

On January 17, 1989, the arbitrators entered their award. The record is clear that neither Janet Massey nor her counsel withdrew from the arbitration proceedings before the rendition of the award. It was not until February 3, 1989, at a hearing scheduled to allocate the settlement funds, that Mr. Turley for the first time claimed there

was no agreement to arbitrate and his client wished to have a jury trial on allocation.

The threshold question in points of error two and three is whether there was an agreement to arbitrate. The record makes it clear that there was such an agreement. Appellants contend there is no agreement because their offer to arbitrate was not accepted in the manner specifically called for. We have discussed this contention above. The June 8, 1988 letter did not call for a specific form of acceptance. This argument is without merit. As to whether the parties ever consummated a binding agreement, i.e. was the offer to arbitrate ever accepted, two independent rules of contracts apply: acceptance evidenced by a series of writings and acceptance and discharge by performance.

It has long been held that two or more writings that refer to the same subject matter and are proved to be part of an entire transaction are but a single contract as if embodied in one instrument. COR-BIN, CONTRACTS § 508–526. The general rule appears in the RESTATEMENT, CONTRACTS 2d § 132 (1981):

> The memorandum may consist of several writings if one of the writings is signed and the writings and the circumstances clearly indicate that they relate to the same transaction.

This rule has long been accepted and followed by the Texas courts. The Texas Supreme Court has stated:

> Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other. 17 C.J.S. Contracts, § 298, p. 714. The rule is followed by the courts of this state. *Miles v. Briggs* et al., Tex.Civ.App., 18 S.W.2d 850 (writ dism.); *Veal* et al. *v. Thomason*, 138 Tex. 341, 159 S.W.2d 472; 10 Tex.Jur., p. 286, sec. 166.

*Board of Ins. Comm'rs v. Great Southern Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803, 809 (1951).

In this case the letters between the attorneys on behalf of their respective clients constitute a series of writings which refer to the agreement to arbitrate. Taken as a whole, the letters show that the parties did indeed agree to arbitrate. A contract to arbitrate existed by virtue of the series of letters.

Beyond the letters, the offer to arbitrate was accepted and the contract to arbitrate was discharged by performance. RE-STATEMENT, CONTRACT 2d § 235 states that full performance of a duty under a contract discharges the duty. Further, an offer may be accepted by performance. RESTATEMENT, CONTRACTS 2d § 50(2). Here, the parties each selected an arbitrator, submitted position statements and waited for a ruling from the arbitration panel. Appellants did not attempt to revoke or rescind the agreement to arbitrate until after the arbitrators had rendered an award. There was full performance of the agreement to arbitrate by all parties. Pursuant to these two basic principles of contracts, it is apparent there was an agreement to submit the matter to arbitration. It could also be said that appellant ratified the agreement to arbitrate. Ratification occurs when a party recognizes the validity of a contract by acting under it, performing under it or affirmatively acknowledging it. *Zieben v. Platt*, 786 S.W.2d 797 (Tex.App.—Houston [14th Dist.] 1990, no writ). Appellants acted under, performed and acknowledged the agreement to arbitrate. Thus, they ratified the agreement.

Appellants next argue that even if there was an agreement to arbitrate, the trial court erred in finding there was an enforceable settlement agreement based on the arbitration. The answer to this issue is found in the caselaw concerning arbitration.

Texas recognizes a common law right to arbitration which is an alternative to the statutory method. *L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351 (Tex. 1977); *Olshan Demolishing v. Angleton Indep. Sch. Dist.*, 684 S.W.2d 179, 183 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). When an agreement to arbitrate is not governed by the Texas General

Arbitration Act, Tex.Rev.Civ.Stat.Ann. art. 224 (Vernon Supp.1988), the court must judge the validity and binding effect of the arbitration under relevant common law rules. *L.H. Lacy Co.*, 559 S.W.2d at 352. Historically, the settlement of disputes by arbitration has been favored in Texas law. *Id.* at 351. Arbitration is favored by the courts, and every reasonable presumption will be indulged to uphold arbitration proceedings. *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Carpenter v. North River Ins. Co.*, 436 S.W.2d 549, 553 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). An arbitration agreement need not be in any particular form; however, no party is under a duty to arbitrate unless by clear language he has previously agreed to do so; and it must clearly appear that the intention of the parties was to submit their dispute to an arbitration panel and to be bound by the panel's decision. *Wetzel*, 745 S.W.2d at 81. Even if a written agreement is not executed, a common law right to arbitration exists if an appropriate agreement to submit to arbitration is shown. *Id.* at 81 *citing L.H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348 (Tex.1977).

■ As we have stated above, under the common law principles of contracts, the parties had an agreement to arbitrate. The letters, documents and testimony in the record reveals a clear intention by the parties to submit the allocation issue to the arbitration panel and to be bound by its decision. This court has stated, "... if it walks like an enforceable agreement, talks like an enforceable agreement, and quacks like an enforceable agreement we will regard it as one." *Stein v. American Residential Management*, 781 S.W.2d 385, 387 (Tex.App.—Houston [14th Dist.] 1989), *writ denied per curiam* 793 S.W.2d 1 (Tex. 1990). We are still left with the question of whether Janet Massey could withdraw from this agreement before the court entered judgment.

Under even the earliest Texas cases, once the parties had submitted their disputes to arbitration and an award had been made, the parties were bound by the award if no fraud, mistake or misconduct was involved. *L.H. Lacy Co.*, 559 S.W.2d at 352 (citations omitted). This rule has been applied to uphold executory agreements to arbitrate future disputes as well as agreements entered into after a dispute arose. *Id.; Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740 (1943). An attempt to withdraw after the arbitration panel has made a preliminary award is viewed as ineffective under Texas common law. *L.H. Lacy Co.*, 559 S.W.2d at 352; *Aguilar v. Abraham*, 588 S.W.2d 599, 601 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). In *Carpenter v. North River Ins. Co.*, this court rejected a contention that an effective withdrawal from arbitration had been made. In that case, the attorney for the insurance company objected to the substitution of one of the arbitrators and at the date set for the hearing, appeared only to file a motion for continuance. The motion was denied and the arbitrators rendered an award. This court upheld the award reasoning that there was no unequivocal indication of an intent to revoke the arbitration agreement. In so holding, this court stated the rule that:

> ... the award is presumed to have been made pursuant to an existing agreement until the complaining party sustains the burden of proving that it had withdrawn its agreement to arbitrate.

*Carpenter*, 436 S.W.2d at 551.

Janet Massey, as indicated by the trial court judgment, did not meet this burden of proof. In fact, under cross-examination at a hearing, Mrs. Massey admitted there was an agreement to arbitrate and that she did not attempt to withdraw from the arbitration until after an award had been rendered. Mrs. Massey could have revoked the arbitration agreement by refusing to participate in the proceedings. *L.H. Lacy Co.*, 559 S.W.2d at 353. Instead, she chose to pursue arbitration, in fact she proposed it, and in doing so she did not exercise her opportunity to make a common law revocation. In light of our decision that there was an agreement to arbitrate, and since Mrs. Massey did not withdraw her consent to the arbitration until after an award was

rendered, the trial court was correct in finding the parties entered into a binding arbitration and settlement agreement.[2] Appellants' second and third points of error are overruled.

■ In their fourth point of error appellants allege that even if there was an agreement to arbitrate and the law provides that parties be bound by the arbitration, the trial court erred in entering the order based on the agreement because: (1) consent did not exist at the time the judgment was entered; and (2) the agreement did not comply TEX.R.CIV.P. 11.

The Texas Supreme Court in *Kennedy v. Hyde* stated that compliance with Rule 11 is necessary but not alone sufficient for an agreed judgment. *Kennedy v. Hyde*, 682 S.W.2d 525, 539 (Tex.1984). The court states that not only must an agreement comply with Rule 11, consent must also exist at the time the agreed judgment is entered. Appellants first point to this holding and argue that since Janet Massey had withdrawn her consent to be bound by the arbitration, the trial court erred in entering its judgment based on the arbitration award. We disagree.

While we do not disagree with the general rule that consent must exist at the time an agreed judgment is entered, this case is not simply an "agreed judgment" case. This is an arbitration case, and as stated above, the law is clear that a party may not withdraw its consent to binding arbitration after an award has been made. The consent to be bound came before the time for judgment. This is the very nature of arbitration. To place arbitration agreements in the same category as agreed judgments as far as the issue of consent is concerned would be to eviscerate the law concerning what binds a party to arbitration. We therefore hold that appellant Janet Massey did consent to the judgment rendered by the trial court concerning arbitration by virtue of submitting to arbitration and failing to timely revoke her consent.

■ Though we have held that consent did exist, the question of whether the agreement complied with Rule 11 still exists. The rule states:

Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with papers as part of the record, or unless it be made in open court and entered of record.

Rule 11 can be traced in substantially its present form to District Court Rule 28, adopted in 1840 under the law of the Republic of Texas, 1 Tex. 849, 852 (1848), and recodified as District and County Court Rule 47 in 1877 by authority of article V, section 25 of the Texas Constitution. *Kennedy*, 682 S.W.2d at 526. The original rationale for the rule was stated in *Birdwell v. Cox*, 18 Tex. 535, 537 (1857).

Agreements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in writing, and if not, the court will not enforce them. They will then speak the themselves, and the court can judge of their import, and proceed to act upon them with safety. The rule is a salutary one and ought to be adhered to whenever counsel disagree as to what has transpired between them.

In *Kennedy v. Hyde*, the Texas Supreme Court stated that as a general rule compliance with Rule 11 is necessary and the clear language of the rule indicates that compliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit. Under

---

2. Whether the minors could withdraw from the arbitration once an award had been entered is a different question. Minors represent a special case wherein court approval is generally required for any agreement made on their behalf. It could be said however, that the trial court gave such approval in this case at the hearing on January 4 where Mrs. Galvan told the court that the allocation issue was pending before an arbitration panel. This question however, was not presented in this appeal.

the language of the rule, the agreement must either be in writing, signed and filed with the court or made in open court and entered into the record. In this case, the record reflects that neither of these requirements was met. While a series of writings reflecting the agreement to arbitrate does exist, they were never filed with the court as part of the record. Appellees contend the agreement was made in open court at the hearing held on January 4. Unfortunately, the court reporter failed to transcribe that portion of the proceeding. Thus, the agreement was not "entered of record." It is apparent there was no technical compliance with Rule 11 regarding the agreement to arbitrate.

However, the court went on to state in *Kennedy v. Hyde* that its holding should not be interpreted as requiring "slavish adherence" to the literal language of the rule in all cases. *Kennedy*, 682 S.W.2d at 529. The court held that there are well-recognized exceptions to the rule in Texas and in other jurisdictions with a similar rule. *Id.* Specifically, the court held that a nonconforming agreement may be enforced for equitable reasons.

In determining whether a particular situation warrants an exception to Rule 11, an examination of the policy behind the rule is always paramount. *Id.* The reason for the rule is clear. The *Kennedy* decision, quoting *Birdwell* stated "oral agreements about suits 'are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies.' " *Id.* Further, the court, quoting *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex.Comm'n App.1921, holding approved) said:

Agreements of counsel in the course of a judicial proceeding which affect the interests of their clients should not be left to the fallibility of human recollection.

We agree that the benefits of Rule 11 are substantial, and that in general the rule should be followed. However, we hold that this is one of the cases where the equities require that we do not resort to "slavish adherence" and hypertechnical construction. First, the purpose of the rule and the rationale behind it speak about miscon-

struction of oral agreements. In this case we have a series of writings which, while not technically in compliance with Rule 11, clearly show an agreement to arbitrate. Further, until the arbitrators made the award, there was never any dispute over the fact that there was such an agreement or what the terms of that agreement were. Thus, we do not have a purely oral agreement in this case. Second, it would be highly inequitable to allow the appellants who proposed the arbitration in the first place to escape its impact through a technicality when it is clear that appellants had no complaint about the arbitration proceeding until an award which they considered unfavorable was rendered. To allow this would be to elevate form over substance. Third, statements made by the trial court during the hearings reveal that it believed such an agreement existed between the parties, and Mrs. Massey's own testimony discloses the fact that there was an agreement. Though there was no technical compliance with Rule 11, we hold the equities require this court to uphold the agreement to arbitrate. Appellants' fourth point of error is overruled.

In their first point of error appellants allege the trial court erred in finding that appellant Janet Massey waived her right to a jury trial as to the apportionment of the settlement funds.

■ Based on our previous holding that there was an agreement to arbitrate and be bound by arbitration, this point is without merit. It is clear that when a party agrees to have a dispute resolved through arbitration rather than judicial proceeding, that party has waived its right to a jury trial. The situation is analogous to those situations where a party has paid its jury fee and properly requested a jury but proceeds in a trial before the court. In such a situation, the party cannot complain that it was entitled to have a jury decide the issue rather than the court once the court rules adversely to the party's position. *Fisher v. Trees, Inc.*, 713 S.W.2d 162 (Tex.App.— Texarkana 1986, writ ref'd n.r.e.); *Walker v. Walker*, 619 S.W.2d 196 (Tex.Civ.App.— Tyler 1981, writ ref'd n.r.e.). Similarly,

appellants cannot claim they were entitled to a jury trial after they submitted to arbitration and the arbitrators made an award appellants felt was in error. Appellants' first point of error is overruled.

■ Appellants' fifth point of error alleges that the trial court erred in denying the LOWT's application for attorney's fees.

LOWT filed an application for attorney's fees seeking to enforce its contingent fee contract with the minors. This contract was made by Janet Massey on behalf of the minor children. In the application, LOWT claimed that under the contract it was entitled to one-third of the recovery awarded to the minors as attorney's fees. At a hearing held on June 19, 1989, the parties presented evidence concerning the contingent fee contract. The trial court denied the application.

Appellees contend the trial court did not have jurisdiction to hear LOWT's application for attorney's fees. Without deciding this issue, we hold the trial court did not err in denying LOWT's application.

TEX.R.CIV.P. 44 provides for when a minor may be represented by "next friend." Rule 44 states in pertinet part:

> Minors ... who have no legal guardian may sue and be represented by "next friend" ...

The rule clearly states that only when a minor has no legal guardian may that minor be represented by a next friend. On December 23, 1986, when Janet Massey contracted with LOWT to represent the minors, the minors had a legal guardian, Mrs. Galvan, the natural mother. The Texas Supreme Court has stated the death of the managing conservator ends the conservatorship order and it no longer constitutes a valid subsisting order. *Greene v. Schuble*, 654 S.W.2d 436, 438 (Tex.1983). The court then held that without an existing court order, conservatorship is vested in the natural parent to the exclusion of other interested parties. *Id.* Thus, when Hugh Massey, the managing conservator, died, conservatorship vested in Mrs. Galvan, the natural mother. TEX.FAM.CODE ANN. § 12.-04(7) provides that the natural parent of a minor has the power to represent the child

in legal action and to make other decisions of substantial legal significance concerning the minor. Further, TEX.PROB.CODE ANN. § 109 provides that if one parent is dead, the surviving parent is the natural guardian of the minor children and is entitled to be appointed guardian of their estates. LOWT claims that Hugh Massey's will appointed Janet Massey as guardian for the minor children. While this may be true, the will had not been probated, nor had Janet Massey been appointed guardian at the time the contract was entered into. Also, when the suit was filed, Janet Massey had not yet been appointed guardian of the children. It is clear that on December 23, 1986, Janet Massey had no legal right to contract for the minor children. That right lay with the natural mother, Mrs. Galvan.

Beyond the fact that Janet Massey was not the legal guardian of the minors at the time the contract with LOWT was executed and thus had no authority to make that contract, it has been held that before a guardian may file a suit in a court other than that which created the guardianship, the guardian must first obtain permission from the court which created the guardianship. *Maxwell v. Mason*, 682 S.W.2d 640 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). It is undisputed than even after Janet Massey was appointed the guardian of the minors, she did not get the probate court's permission to institute a wrongful death suit on behalf of the minors in district court.

We hold that at the time the contract was made and at the time the suit was filed, Janet Massey had no legal right to bind the minor children. Therefore, the trial court was correct in denying LOWT's application for attorney's fees.

■ Appellants' argument concerning the common fund doctrine is inapplicable in this case. The common fund doctrine applies only where a class of person, through the efforts of another person's attorney, comes into a recovery they otherwise would not have enjoyed. *City of Dallas v. Arnett*, 762 S.W.2d 942, 954 (Tex.App.—

Dallas 1988, writ denied). While it is true that LOWT secured the settlement from Jamail, Inc., this appeal itself and the record indicates that if LOWT had been successful, the minor children would have received far less than 65% of the settlement funds. It would be illogical to apply the common fund doctrine and allow LOWT to recover where it has actively engaged in a course of conduct designed to defeat or lessen the recover of the fund beneficiary.

Further, *Arnett* held that an attorney's fee from a non-contracting party is limited to the reasonable value of his services. *Id.* at 955. Thus, if LOWT did have a contract it is not entitled to use the common fund doctrine. Since LOWT did not have a valid contract it was required to present evidence to establish what a reasonable fee would be. LOWT presented insufficient evidence on what a reasonable fee would be. In light of the above, appellants' fifth point of error is overruled.

In their sixth point of error appellants contend the trial court abused its discretion in the amount of attorney's fees awarded to LOWT from the worker's compensation subrogation interest which appellee La Marque I.S.D. was relieved from paying in the future as a result of the credit La Marque received from the Jamail, Inc. settlement.

The trial court found the total amount of La Marque's worker's compensation subrogation recovery for death benefits previously paid was $32,852.00. From this amount, the trial court deducted one-third as attorney's fees. The court divided the attorney's fees, giving twenty percent (20%) to LOWT and thirteen and a third (13⅓%) to the attorney for La Marque. The trial court also awarded attorney's fees to LOWT and counsel for La Marque from the worker's compensation subrogation recovery for death benefits to be paid in the future which La Marque was relieved from paying because of the credit it was entitled to by virtue of the settlement with Jamail, Inc. Without making a specific finding concerning the amount of the future death benefits La Marque was relieved from paying, the trial court awarded LOWT $17,241.30 and $8,881.89 to counsel for La Marque. Appellants contend the trial court abused its discretion in that the attorney's fees awarded from the future benefits were: (1) based on a total amount of future benefits that was manifestly too low; or (2) too small a percentage of the total amount of future benefits as attorney's fees.

Appellants' lengthy argument and calculations point out that the trial court could have awarded attorney's fees that were much higher. However, TEX.REV.CIV.STAT. ANN. art. 8307, sec. 6a(b) (repealed 1989) states that the court "shall award and apportion an attorney's fee allowable out of the association's subrogation recovery between such attorneys ..., the aggregate of such fees not to exceed thirty-three and one-third percent (33⅓%) of the subrogated interest." This statute sets a maximum for attorney's fees, however, it does not bind the trial court to a minimum. Thus, the amount to be awarded to the attorneys out of the subrogation recovery is within the sound discretion of the trial court, limited to a maximum award of thirty-three and one-third percent (33⅓%). We cannot say that the trial court abused its discretion in its award. We do not know what factors the court took into account. The mere fact that calculations show the trial court could have awarded more money in attorney's fees is by itself insufficient to show an abuse of discretion. Thus, appellant's sixth point of error is overruled.

The judgment of the trial court is affirmed.