Enrique PADILLA, Appellant,

v.

Ernest J. LaFRANCE, Individually and as Representative of the Estate of Ruth LaFrance, Madeleine LaFrance, Individually and as Next Friend of Michelle LaFrance, Marlene Luther and Marilyn Koenig, Appellees.

No. B14–93–00134–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 7, 1994.

Rehearing Denied May 5, 1994.

Arthur M. Glover, Jr., Ronald P. Schramm, James B. Lewis, Houston, for appellant.

Jeffrey Steidley, D. Craig Olivier, Jeffrey W. Hitt, Richard P. Hogan, Jr., Houston, for appellees.

Before MURPHY, SEARS and DRAUGHN, JJ.

## MAJORITY OPINION

SEARS, Justice.

This appeal involves the question of whether a settlement agreement, pursuant to pending litigation, is enforceable under contract law when it does not comply with the requirements of TEX.R.CIV.P. 11. Under the facts of this case, we hold that it cannot be enforced as a contract.

Appellees sued appellant and others for personal injuries sustained in an automobile accident. Appellant was driving a pick-up truck while intoxicated and crossed the center line of the road striking the car containing the LaFrance family. Ruth LaFrance was killed, Ernest LaFrance was seriously injured, and Michelle LaFrance, an attorney, sustained a severe head injury and is severely and permanently brain damaged. She is currently in a permanent vegetative state. The LaFrance family sued appellant, and others, and appellant is the only defendant in this appeal. The attorneys for appellant and the appellees entered into settlement negotiations, and they hotly dispute whether a settlement agreement was consummated.

Appellant was insured by State Farm Mutual Automobile Insurance Company, and his claim was handled by their adjuster, Phil Bradshaw. State Farm retained attorney Brian Chandler to defend the original lawsuit. During the pendency of the lawsuit, a series of letters and memoranda were exchanged between Bradshaw and/or Chandler and appellees' attorney, Jeffrey Steidley, regarding possible settlement of appellees' claim for the policy limit of $40,000.00.

On April 10, 1991, Steidley sent an "offer of settlement" to Chandler which stated in pertinent parts as follows:

> At this time we make demand the for [sic] policy limits of $40,000.00 for full and final settlement of this case against the insured that you represent. *Payment* of this sum should be made on or before Tuesday, April 23, 1991 at 5:00 p.m., by delivery of checks in the appropriate amounts to the offices of the undersigned made payable in the following amounts and to the following payees:

> One check in the amount of $20,000.00 to Madeleine LaFrance as next friend of Michelle LaFrance and Oliver N. Steidley. One check in the amount of $20,000.00 made payable to Ernest J. LaFrance, Marlene Luther, Marilyn Koenig, Madeleine LaFrance and Oliver N. Steidley, their attorneys of record.

> \* \* \* \* \* \*

> Please be advised that although I will be more than happy to discuss this case with you or any of your representatives, no oral discussion that we may have will serve to alter the time limits expressed in the correspondence. I look forward to *receipt* of the checks on or before date specified, failing which this offer to settle will be withdrawn and my clients will proceed to perfect their rights under Texas law.... (emphasis in original).

As the insurance adjuster, Bradshaw contacted Steidley regarding the settlement offer, and requested documentation from him, including a death certificate of Ruth LaFrance and information regarding her estate. On April 15, 1991, Steidley sent a letter to Bradshaw which allowed an alteration of the payee on one of the checks. Bradshaw contends that he informed one of Steidley's employees that there was a medical lien still outstanding that needed to be resolved before the parties could settle. In the late afternoon of April 23, 1991, which was the deadline set by Steidley, Bradshaw faxed a memorandum to Steidley which read in full:

> This will confirm our settlement agreement of 4/18/91, whereby State Farm agreed to meet the policy limit demand set out in your letter of 4/10/91. The only thing holding up resolution of this is the hospital lien re: Michelle. I await word from you regarding the lien so I know to whom to make drafts payable.

Steidley responded the same day with the following:

> This letter will confirm that the above referenced matter has been settled for all applicable policy limits, which have been represented to us to be $40,000.00. Please forward settlement checks in the above referenced matter. This office will agreed [sic] to take care of the lien filed by [the hospital] out of the settlement funds forwared [sic] by your office.

Bradshaw claims he did not see the response letter until he returned to his office the following day, April 24, 1991. On April 30, 1991, Chandler apparently requested an extension of time from Steidley and Steidley refused to extend the offer. On that same day, Chandler tendered two checks to the appellant along with another settlement agreement. Steidley refused to accept the checks or to sign the agreement. Chandler subsequently sent a copy of Steidley's April 23rd letter to the district clerk's office, requesting that the letter be filed with the papers of the cause.

Appellant subsequently filed a cross-action in the original lawsuit, contending that the parties had entered into a contract and he sued for enforcement of the contract. Appellant filed a motion for summary judgment wherein he contends the settlement agreement was a contract, complete with offer, acceptance, and consideration. Appellees responded by answering the cross-action and moving for a severance of that action. Appellees also filed a motion for summary judg-

ment based on the cross-action, contending it failed to comply with the requirements of Rule 11, and, that no contract existed as a matter of law.

The trial court granted appellees' motion for summary judgment on the grounds that there was a lack of consideration to support a contract, and, that there was no legally enforceable Rule 11 agreement as a matter of law. The trial court also denied appellant's motion for summary judgment on the grounds that there was a fact issue concerning performance of the contract, there was insufficient consideration for the contract, and, that as a matter of law the contract was not legally sufficient under Rule 11.

In six points of error, appellant contends that the trial court erred in granting appellees' motion for summary judgment and in denying his motion. He contends there is a fact issue as to whether the settlement agreement is enforceable based on contract principles. Appellees bring six cross-points of error in which they challenge this court's jurisdiction, contending that the transcript was not timely filed. This court previously found that appellant's motion for reconsideration in the trial court was the equivalent of a motion for new trial, that the appellant time table was extended, and that the transcript was timely filed. All of appellees' cross-points are overruled.

Because all of appellant's points of error deal with his belief that the settlement agreement is enforceable as a contract, we will deal with all the points of error at one time.

■ The basic statement of law upon which appellant relies is: "The law of contracts governs settlement agreements." In support of this broad statement of the law, appellant cites several cases. *Cothron Aviation, Inc. v. Avco Corp.*, 843 S.W.2d 260, 263 (Tex.App.—Ft. Worth 1993, writ denied); *Ortega–Carter v. American International Adjustment Company*, 834 S.W.2d 439, 442 (Tex.App.—Dallas 1992, writ denied); *Stewart v. Mathes*, 528 S.W.2d 116, 118 (Tex.Civ. App.—Beaumont 1975, no writ); *Massey v. Galvan*, 822 S.W.2d 309, 318 (Tex.App.— Houston [14th Dist.] 1992, writ denied). A discussion of these cases is important to show that appellant's reliance is misplaced.

In *Cothron*, the court held: "Because there is a genuine issue of material fact as to the formation of a contract, we do not determine whether the procedural requirements of Rule 11 were met or whether equity demands enforcement even if the procedural requirements of Rule 11 were not met." *Cothron*, 843 S.W.2d at 265. The court reversed the trial court's granting of a summary judgment based solely on the existence of "a genuine issue of material fact as to whether the parties entered into a settlement agreement." *Id.* Even though the court was not dealing with this issue, it stated in dicta: "This is because settlement agreements are governed by contract law." *Id.* at 263. This is the statement of law which is relied on by the appellant. However, the authority for that statement was *Adams v. Petrade International*, 754 S.W.2d 696, 715 (Tex.App.— Houston [1st Dist.] 1988, writ denied).

A reading of *Adams* reveals that the settlement agreement involved in the *Adams* case was entered into *prior* to litigation. Further, in discussing Rule 11, that court held: "... and an oral settlement agreement made *prior* to the initiation of litigation is *not subject* to its provisions." (emphasis added). *Adams*, 754 S.W.2d at 715. Clearly the settlement agreement in *Adams* was controlled by contract law because it was entered into prior to litigation, and Rule 11 does not apply to *pre-litigation* agreements. The *Cothron Aviation* opinion also relied on *Hernandez v. Telles*, 663 S.W.2d 91, 93 (Tex.App.—El Paso 1983, no writ). Like the *Adams* case, the *Hernandez* case involved an agreement entered into *prior* to litigation. The parties had a contract of sale which they later renegotiated into a second contract and the first contract was effectively cancelled. Subsequently, when suit was brought on the first contract, the existence of the second "agreement" was established by contract law. Again, Rule 11 did not apply.

The second opinion relied upon by the appellants is the *Ortega–Carter* case. In that case, a summary judgment based on a withdrawn settlement agreement was upheld because *Ortega–Carter* "did not raise a defense to the Rule 11 agreement." 834

S.W.2d at 443. Therefore, the case was not determined by contract law, but was decided based on the party's failure to raise a defense, thereby waiving that defense.

*Massey v. Galvan* is a case out of this court, and is likewise inapposite. *Massey* involved an agreement of the parties to take the dispute *out* of the civil courts, submit it to arbitration, and be bound by the results. *Massey* did not complain until after the arbitration had entered an award that was unfavorable to her. In that case, the parties took the case out of the civil courts, thereby rendering Rule 11 ineffective. The *Massey* case clearly cannot be support for appellant's position, and is not in conflict with this opinion. The *Massey* court held that: "When a party agrees to have a dispute resolved through arbitration rather than judicial proceedings, that party has waived its right to a jury trial." *Massey*, 822 S.W.2d at 318. The *Massey* court makes an analogous situation to a party paying a jury fee, but proceeding to trial before the court. In such a situation, the court held that "... the party cannot complain that it was entitled to have a jury decide the issue rather than the court, once the court rules adversely to the party's position." *Id.*

The only case relied upon by appellant that support his argument is *Stewart v. Mathes*. The trial court, sitting in *Probate*, enforced a settlement agreement, which was withdrawn before judgment, based on contract law. The Beaumont Court of Appeals affirmed and stated: "consent judgments are subject to the law of contracts." 528 S.W.2d at 118. Although that court cited *Burnaman, infra,* they tried to distinguish it and declined to follow its reasoning.

We disagree with the *Stewart* opinion and have previously held to the contrary. In *Buffalo Bag Co. v. Joachim,* 704 S.W.2d 482 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd.), we held: "Notwithstanding a valid Rule 11 agreement, consent must exist at the time an agreed judgment is rendered." *Id.* at 483. In that case, the settlement agreement was read into the record with both parties and attorneys acknowledging their consent. However, the trial court did not immediately "render" judgment, and the consent of one party was withdrawn before judgment was rendered. We held that the "agreement" was not enforceable.

Texas Rules of Civil Procedure, Rule 11, was first enacted in 1941. It read as follows:

No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

The rule remained unchanged until 1988, when it was amended to include the preface: "Unless otherwise provided in these rules,...." The 1988 amendment made it clear that Rule 11 was subject to modification by any other rule of civil procedure. The original source of Rule 11 was Texas Rule 47 (for district and county courts).

While there has been considerable confusion, and an abundance of dicta, concerning whether Rule 11 means what it says, the Supreme Court tried to settle the confusion in the *Kennedy* case. *Kennedy v. Hyde,* 682 S.W.2d 525 (Tex.1984). The Supreme Court held that Rule 11 was a "minimum requirement for enforcement of all agreements concerning pending suits...." *Id.* at 529. The Court cited *Burnaman,* for the proposition that ... "notwithstanding a valid Rule 11 agreement, consent must exist at the time an agreed judgment is rendered." *Id.* at 528 (*citing Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951)). The Supreme Court had previously strongly "implied" that a settlement agreement was also to be judged by Rule 11 standards. *Williams v. Hollingsworth,* 568 S.W.2d 130, 131 (Tex.1978); *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292, 292 (Tex.1976). The underlying appellate court in *Kennedy* had held that an agreement in compliance with Rule 11 would authorize an agreed judgment on the merits of the underlying suit, and an agreement in violation of Rule 11 would support the same results based on a breach of a contract to settle the lawsuit. The *Kennedy* court reasoned that such an interpretation would clearly result in a finding that "no agreement between attorneys or parties touching any suit pending need comply with Rule 11." *Kennedy,* 682 S.W.2d at 528. The Supreme

Court held that such a result would not be correct. The court went on to say: "If any stipulation fails to comply with Rule 11, but could nonetheless be enforced as a contract, there would be no need for Rule 11." *Id.* We believe that the Supreme Court could not have made a clearer statement than they did in *Kennedy.* They specifically held that contract law could *not* be applied to enforce an agreement that does not comply with Rule 11. In a very short opinion, the Supreme Court again cited *Burnaman* and held: "A party may revoke his consent to settle a case anytime before judgment is rendered." *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874 (Tex.1982).

■ Litigation within litigation has always been viewed with disfavor by the Texas courts, and we see no reason to approve of it. The *Kennedy* court recognized that some would view that their holding would abridge the substantive law of contracts, and thereby exceed the rule making authority granted in TEX.REV.CIV.STAT.ANN. art. 1731a (Vernon 1962). Article 1731a provides that rules of procedure "shall not abridge, enlarge or modify the substantive rights of any litigant." The Supreme Court recognized that Rule 11 may affect a substantive right by rendering oral contracts touching on a pending suit unenforceable in contract law. However, the court cited the original rationale for the rule as: "Agreements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in writing, and if not, the court will not enforce them. They will then speak for themselves, and the court can judge of their import, and proceed to act upon them with safety. *The rule is a salutary one, and ought to be adhered to whenever counsel disagree as to what has transpired between them*" (emphasis added). *Kennedy,* 682 S.W.2d at 526 (quoting *Birdwell v. Cox,* 18 Tex. 535, 537 (1857)). We must presume that the legislature was aware of the decisions construing the old rule, and we must further presume that the legislature consented to those interpretations when it approved the identical language in the new Rule 11. *See Kennedy,* 682 S.W.2d at 529.

■ A review of all the case law surrounding Rule 11 makes it clear that the rule contributes to efficient court administration because it limits matters and controversy, and it expedites trial proceedings. Further, Rule 11 "insures that such agreements do not themselves become sources of controversy, impeding resolution of suits." *Kennedy,* 682 S.W.2d at 530. Whether the agreements are oral or written, they are subject to dispute and rejection unless and until they comply with Rule 11.

This appeal is a classic example of the reason behind Rule 11. Appellant contends he accepted an offer of settlement made by appellees. Appellees contend the offer was conditioned upon payment being received no later than 5:00 p.m., April 23, 1991. Appellant argues the "deal" was changed by his letter of April 23, and appellees' acceptance of that change. Appellees counter that the "time for payment" was never changed, payment was not timely received, and the offer was withdrawn. Appellant alternatively contends he complied with Rule 11 by filing the "letters" with the records of the court. However, appellee rejected the settlement offer *before* the letters were filed with the court. Therefore, based on the foregoing caselaw, there was no agreement and there was no compliance with Rule 11. Rule 11 prevents this type of dispute within a dispute, and *clearly* outlines what must be done to make any "agreement between attorneys or parties touching any suit pending" enforceable. We hold the settlement agreement in this case was subject to Rule 11, did not comply with Rule 11, and is not enforceable under contract law.

All of appellant's points of error are overruled and the judgment of the trial court is affirmed.

MURPHY, Justice, dissenting.

I respectfully dissent. I would hold that a fact issue exists as to whether the parties to this suit entered into a contract to settle the underlying lawsuit, because I, too "perceive a fundamental difference between an agree-

ment concerning a suit and a suit concerning an agreement." *Kennedy v. Hyde*, 682 S.W.2d 525, 530 (Tex.1984) (Gonzalez, J., dissenting).

The majority relies heavily on *Kennedy* to support its position that for a settlement agreement to be enforced in any manner, it must comply with Rule 11. However, *Kennedy* concerned a disputed *oral* settlement agreement, and the holding in *Kennedy* relies on the policy that "oral agreements concerning suits are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies." *Kennedy*, 682 S.W.2d at 529 [citation omitted]. The case concerning us today turns on the issue of whether a series of *writings* constitute a contract to settle. While I recognize the propriety of requiring oral negotiations to be memorialized in writing in order to eliminate misunderstandings over what was agreed to, when there exists a writing or writings purporting to establish the agreement, I believe there is no reason to allow one party to arbitrarily repudiate a valid, binding contract simply because it refers to a pending lawsuit. When a party breaches a contract, the party harmed by the breach should be able to bring suit to recover damages caused by the breach, regardless of the fact that the contract was to settle a lawsuit.[1]

I also find the majority's holding disturbing in light of modern trial practice. Many agreements to settle pending litigation are made informally over the telephone, or literally "on the courthouse steps" on the eve of trial. To require the parties to immediately rush to the courthouse with a signed document in order to quickly comply with the requirements of Rule 11 before the other party reneges on his agreement goes against the grain of the policy in Texas jurisprudence which favors the settlement of lawsuits.[2] As the appellant has argued, when a settlement agreement is reached, the parties obtain peace of mind. Today's holding removes that peace of mind, as well as any motivation

for parties to enter into settlement agreements at all. Why should a party agree to settle when the other party may back out of the agreement at any time before the parties appear before a judge and have judgment rendered on the agreement? Even a written, signed settlement agreement, according to today's holding, is not worth the paper it is written on, unless the parties rush to the courthouse and file the agreement immediately. And even then, what if one party changes his mind on the way? Or standing in line at the filing office? Or a millisecond before the paper is file stamped? The effect of the majority's holding is that a written, signed settlement agreement would provide no more protection than an oral discussion between the parties. This is just not consistent with modern trial practice, which even the *Kennedy* court recognized as a limitation on the rigid requirements of Rule 11. *Kennedy*, 682 S.W.2d at 529.

In citing cases such as *Buffalo Bag* and *Samples Exterminators*, the majority confuses rendition of a consent judgment based on an agreement to settle with a judgment on a suit to enforce a contract to settle. The case before us today is not a consent judgment case at all, because appellant is not asking the court to render judgment on the agreement. On the contrary, appellant is only asking that the court allow him to pursue a suit for breach of the contract to settle the lawsuit. Because I would find that Rule 11 is not a bar to such a suit, and that a fact issue exists as to the parties' intent to enter into a contract, I dissent.

---

1. I agree that such a contract could not be specifically enforced, as that would be tantamount to authorizing a consent judgment on an agreement where one party has withdrawn consent to the agreement. *See Kennedy*, 682 S.W.2d at 528; *Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

2. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex.1986); *McGuire v. Commercial Union Ins. Co.*, 431 S.W.2d 347, 352 (Tex.1968).