**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0698n.06

No. 12-1253

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jul 29, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| In re: DOW CORNING CORPORATION, | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| ----------------------------------------------- | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| | ) | |
| DOW CORNING CORPORATION, | ) | **O P I N I O N** |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHEILA CAFFREY; CHRISTINA GIBSON; | ) | |
| HILDA McANDREW; REBECCA YOUNG, | ) | |
| | ) | |
| **Appellees.** | **)** | |

**BEFORE: NORRIS, MOORE, and DONALD, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Regrettably, there are times when otherwise well-considered procedural rules result in hardship. This is one such time. Claimants on appeal are four women who allege that they were injured by silicone breast implants manufactured by Dow Corning Corporation ("Dow"). Like thousands of other women, they filed suit against Dow in the early 1990s. One of the favored venues for plaintiffs' attorneys involved in this mass tort litigation was Harris County (Houston), Texas. The claimants were all slated for trial in early 1995.

1

Claimants had elected to "opt out" of a global settlement approved by the United States District Court for the Northern District of Alabama, which had been assigned a multi-district action designed to manage the vast array of suits filed against Dow. *In re Silicone Gel Breast Implant Products Liability Litigation*, Case No. MDL 926. Part of the global settlement included a protocol, similar to a grid, which helped to determine with some consistency what an injured party could expect by way of compensation depending on her situation.

For its part, Dow and its lawyers preferred to settle cases rather than risk large verdicts, particularly with those 57 opt-out plaintiffs who filed suit in Harris County. Dow retained Kenneth Feinberg & Associates with an eye to negotiating a "mini-global" settlement with all of the opt-out plaintiffs. This proposed settlement was called the Marshall Plan and included a protocol like the one used in the MDL case to fix a dollar amount on claims. The Plan went through a number of drafts but it was ultimately abandoned when Dow filed for Chapter 11 bankruptcy protection on May 15, 1995. However, the Plan remains important to this appeal. It contemplated a procedure by which a claimant would agree to an alternative dispute resolution process ("ADR"). The mediator would use the protocol and award damages which would be binding on Dow but not on the claimant.

The claimants involved in this appeal all submitted to mediation and were awarded substantial damages. However, these awards were never paid by Dow. Rather, approximately three months later, Dow sought bankruptcy protection. Claimants eventually filed proofs of claim in the bankruptcy court to which Dow objected. The district court removed the claims from the bankruptcy court and held a bench trial in 2004. In 2012, it issued its opinion and allowed the

claims. The underlying district court opinion includes detailed factual findings which we review for clear error; its legal conclusions, however, are subject to de novo review. *Spurlock v. Fox*, 716 F.3d 383, 393 (6th Cir. 2013).

In this appeal, the claimants contend that they entered into the ADR process expecting Dow to be bound by the mediator's decision. They point out that Dow never objected to that characterization before declaring bankruptcy. Dow counters that these mediation sessions were in contemplation of the Marshall Plan. The company points to evidence that the awards would be incorporated into the Plan. In fact, drafts of the Plan continued to include these claimants despite the fact that the awards had been determined. Asking us to overturn the district court's order, the company denies that the mediator's awards are enforceable.

Claimants face a major obstacle, which is the crux of this appeal: Texas Rule of Civil Procedure 11, which reads in full as follows:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Tex. R. Civ. P. 11. The policy is longstanding, as this 1857 case from the Texas Supreme Court makes clear:

> The alleged agreement not being in writing, and the counsel differing as to the existence of such agreement, the court very properly refused to grant a new trial on that ground. Agreements of counsel, respecting the disposition of causes, which are merely verbal, are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies; and hence there is great propriety in the rule which requires that all agreements of counsel respecting their causes shall be in

3

writing, and if not, the court will not enforce them. They will then speak for themselves, and the court can judge of their import, and proceed to act upon them with safety. The rule is a salutary one, and ought to be adhered to whenever counsel disagree as to what has transpired between them.

*Birdwell v. Cox*, 18 Tex. 535, 537 (1857). This strong preference for written judgments has been reiterated by the Texas Supreme Court. *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984) ("The clear language of the rule indicates, and this court holds, that compliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit."); *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768-69 (Tex. 2007). Dow vigorously argues that Rule 11 precludes claimants' awards from being construed as judgments enforceable in the courts of Texas.

However, cases exist in which settlements have been enforced without technical compliance with Rule 11. For instance, the Texas Supreme Court has held that a series of letters among counsel satisfied the rule even though one party later withdrew its consent:

> Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement. The judgment in the latter case is not an agreed judgment, but rather is a judgment enforcing a binding contract.

*Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). And, in the case most relied upon by the district court, an intermediate Texas appellate court enforced an agreement to arbitrate even though one party sought to withdraw consent:

> We agree that the benefits of Rule 11 are substantial, and that in general the rule should be followed. However, we hold that this is one of the cases where the equities require that we do not resort to "slavish adherence" and hypertechnical construction. First, the purpose of the rule and the rationale behind it speak about

4

misconstruction of oral agreements. In this case we have a series of writings which, while not technically in compliance with Rule 11, clearly show an agreement to arbitrate. Further, until the arbitrators made the award, there was never any dispute over the fact that there was such an agreement or what the terms of that agreement were. Thus, we do not have a purely oral agreement in this case. Second, it would be highly inequitable to allow the appellants who proposed the arbitration in the first place to escape its impact through a technicality when it is clear that appellants had no complaint about the arbitration proceeding until an award which they considered unfavorable was rendered. To allow this would be to elevate form over substance. Third, statements made by the trial court during the hearings reveal that it believed such an agreement existed between the parties, and Mrs. Massey's own testimony discloses the fact that there was an agreement. Though there was no technical compliance with Rule 11, we hold the equities require this court to uphold the agreement to arbitrate.

*Massey v. Galvan*, 822 S.W.2d 309, 318 (Tex. App. 1992).

The district court followed the equitable principles of *Massey* and held that enough evidence existed to support enforcement of the mediation awards. Before doing so, however, it recognized that claimants had not shown that any "settlements were placed on the record in open court," nor had they "produced any precise written agreement with [Dow] evidencing a written settlement agreement as to the four Claimants at issue." Dist. Ct. Op., Doc. 626 at 46. In other words, the requirements of Rule 11 had not been followed.

That said, the court explained why, in its view, the evidence produced at trial called for the kind of equitable exception to Rule 11 outlined in *Massey*. Of critical importance in reaching this conclusion was the court's finding that Michael Gallagher, attorney for the claimants, and Kenneth Feinberg, attorney for Dow, had a "working agreement" that the Marshall Plan approach would be used in the mediation of each of the four claimants' cases and, critically, that this agreement was not

contingent on the Marshall Plan being adopted. Dist. Ct. Op., Doc. 626 at 46-47. The court noted that other cases mediated in the same manner "were placed on the record in open court and [Dow] did not object to those awards." *Id.* at 46.

We are mindful that factual findings of the district court are subject to clear error review. The record is voluminous and often contradictory. One thing is clear to us, however: the record contains neither written documentation nor unequivocal testimony to support a finding that Dow ever agreed to be bound by the mediation awards at issue regardless of the adoption of the Marshall Plan. The contradictory nature of much of the testimony and evidence highlights why Texas courts strictly enforce the hurdles contained in Rule 11 except in rare instances: it promotes finality regarding the binding nature of agreements and, in the process, avoids the kind of costly litigation that this case represents.

The fact of the matter is, as the district court recognized, that counsel for claimants did not take the ministerial steps necessary to render claimants' agreements enforceable under the language of Rule 11. That is regrettable. We have no doubt that claimants suffered injury and that Dow desired to reach a settlement agreement with them. This process was short-circuited by the parties' inability to reach a "mini-global" settlement with respect to the opt-out claimants before Dow's bankruptcy filing. Though we are sympathetic, we are obliged to look to Texas law in this case, and that law precludes enforcement of these agreements, which are different from that at issue in *Massey* in one critical respect: in that case written documentation made it clear that both parties agreed to binding arbitration. *Massey*, 822 S.W.2d at 313-14. Moreover, the parties acknowledged in open

court that a binding agreement existed. *Id.* The same cannot be said in this case. Rather, the record supports that a finding that negotiations of the agreements were never finalized. Under those circumstances, the *Massey* exception to Rule 11 simply does not apply.

The judgment is **reversed** and **remanded** for further proceedings consistent with this opinion.