**Ed BARRAGAN, Plaintiff,**

v.

**WARNER–LAMBERT COMPANY, et al., Defendants.**

**No. EP–02–CA–0077–DB.**

United States District Court,
W.D. Texas,
El Paso Division.

May 15, 2002.

Julie L. Rhoades, Abrahm, Watkins, Nichols, et al., David P. Matthews, Houston, TX, for plaintiff.

Jack Edward Urquhart, Beirne, Maynard & Parsons, L.L.P., Houston, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Plaintiff Ed Barragan's "Motion to Remand," filed in the above-captioned cause on April 3, 2002.[1] Defendants Warner–Lambert Company and Pfizer Inc. filed a Response on April 15, 2002.

After due consideration, the Court is of the opinion that Plaintiffs' Motion to Remand should be granted for the reasons that follow.

## BACKGROUND

Plaintiff commenced this action on January 18, 2002, by filing an Original Petition in the County Court at Law Number 7 of El Paso County, Texas (hereinafter "state court"). Plaintiff named the following individuals and entities as Defendants: Warner–Lambert Company; Parke–Davis, a Division of Warner–Lambert Company; Parke–Davis Pharmaceutical Research, a Division of Warner–Lambert Company; Parke–Davis Pharmaceuticals Limited, a Subsidiary of Warner–Lambert Company; Sankyo U.S.A. Corporation; Sankyo Pharma, Inc.; Sankyo Parke–Davis, a Joint Venture; Pfizer, Inc., Successor in Interest to Warner–Lambert Company ("the Pharmaceutical Defendants"); Jane Doe; John Doe (the "Unnamed Defendants"); and Dr. Joseph McGee (Dr. McGee or the "Doctor Defendant").

Plaintiff alleges that he suffered liver damage caused by the prescription drug Rezulin, which was formulated, manufactured, sold, and distributed by the Pharmaceutical Defendants for treatment of diabetes and prescribed to Plaintiff, a diabetic, by his treating physician, Dr. McGee. The Unnamed Defendants are pharmaceutical sales representatives who directly marketed and promoted Rezulin to physicians. Plaintiff raises causes of action against the Pharmaceutical Defen-

---

**1.** At the same time, Plaintiff filed a "Notice of Filing a Request for an Oral Hearing." The Court, having reviewed the briefs submitted by the parties, is of the opinion that an oral hearing is not necessary. *See* Local Court Rule CV-7(g) (stating that the "allowance of an oral hearing shall be within the sole discretion of the judge").

dants for strict product liability, negligence, breach of implied warranty of fitness for a particular purpose, and merchantability, misrepresentation, fraud, and gross negligence. Plaintiff raises medical negligence claims against Dr. McGee and raises unspecified claims against the Unnamed Defendants. Plaintiff seeks actual damages, punitive damages, attorney's fees, costs, and interest.

Plaintiff is a resident and citizen of Texas. All of the Pharmaceutical Defendants maintain their principal places of business and are incorporated in states other than Texas. Thus, none of the Pharmaceutical Defendants are corporate citizens of Texas. The Defendant Doctor is a citizen and resident of Texas. The citizenship of the Unnamed Defendants is not relevant for removal purposes. *See* 28 U.S.C.A. § 1441(a) (West 1994) (stating that, for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded.").

On March 5, 2002, the Pharmaceutical Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, contending that there is complete diversity between the Parties, as the Doctor Defendant was fraudulently joined. Plaintiff then timely filed the instant Motion to Remand, contending that diversity is not complete because the Doctor Defendant was not fraudulently joined. Defendants filed a Response in which they contend not only that the Motion to Remand should be denied, but that this Court should defer ruling on the Motion pending transfer of the case to Multidistrict Litigation proceedings in the Southern District of New York.

## DISCUSSION

### I. Multi District Litigation

■ On June 9, 2000, the Judicial Panel on Multidistrict Litigation ("JPMDL") consolidated all Rezulin products liability litigation for pretrial proceedings in Judge Kaplan's Court in the Southern District of New York ("Rezulin MDL Court"). *See* 28 U.S.C.A. § 1407 (West 1993) (providing that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings"). On March 29, 2002, the JPMDL issued a Conditional Transfer Order in this case, along with eight other cases pending before this Court. Despite the issuance of a conditional transfer order, this Court nonetheless retains jurisdiction to consider the instant Motion. Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation provides that the pendency of a conditional transfer order "does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." Judicial Panel on Multidistrict Litig. Rule 1.5.

■ Defendants first argue that this Court should defer ruling on the remand motion to allow the MDL judge to consider the motion because "[r]uling on this remand motion runs the risk of inconsistent decisions by different judges in cases that are in the same state and involve the same issue-which is contrary to federal case law." The Court disagrees and is of the opinion that judicial efficiency and economy are better served by this Court considering, before the case is transferred to the MDL Court, the Motion to Remand. Further, as the Court will set forth below, the decision to grant remand in this case is unquestionably supported by case law, including case law from the MDL Court. Hence, there is no risk of this Court contributing to the alleged inconsistent decisions issued by federal district courts.

*See, e.g., In re Rezulin Prods. Liab. Litig. (MDL No. 1348),* No. 00–2843, 2002 WL 548750 (S.D.N.Y. April 12, 2002); *Ritchie v. Warner–Lambert Company,* No. 01–1001, 2001 WL 527501 (E.D.La. May 1, 2001). Indeed, the Court finds that the issue presented here, whether or not the Plaintiff has a possibility of recovery against his treating physician, is not a close one, and thus there is no reason to delay remand to state court. *Ritchie,* 2001 WL 527501, at *2 n. 7.

## II. Diversity Jurisdiction–Fraudulent Joinder

 The Pharmaceutical Defendants removed this case contending that there is complete diversity between the Parties. The general requirements for removal jurisdiction based on diversity are well-established. "[A]ny civil action brought in a State court of which the district courts have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the place where such action is pending." 28 U.S.C.A. § 1441(a) (West 1994). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C.A. § 1447(c) (West Supp.2002). Further, it is well-settled that the removing party bears the burden of showing that the removal was proper. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988).

Under 28 U.S.C. § 1332, district courts have original jurisdiction over actions brought by citizens of different states if the amount in controversy exceeds $75,000.[2] 28 U.S.C.A. § 1332 (West Supp. 2002). If removal is based on diversity, "none of the parties in interest properly joined and served as defendants [may be] a citizen of the State in which such action is brought." 28 U.S.C.A. § 1441(b) (West 1994); *see also Getty Oil Corp. v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1258 (5th Cir. 1988). For purposes of diversity jurisdiction, Plaintiff is an individual who is a citizen of Texas.[3] The Pharmaceutical Defendants are not corporate citizens of Texas. However, Dr. McGee is a citizen and resident of Texas. Thus, the only question before the Court is whether the admittedly non-diverse Doctor Defendant was properly joined.

 Defendants ask the Court to apply the fraudulent joinder doctrine, arguing that the Doctor Defendant is named as a Defendant solely for the purpose of defeating diversity jurisdiction.[4] In order to prove fraudulent joinder, Defendants "must demonstrate either 'outright fraud in the plaintiff's recitation of jurisdictional facts,' or that 'there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.'" *Rodriguez v. Sabatino,* 120 F.3d 589, 591 (5th Cir.1997) (quoting *Burden v. Gen. Dynamics Corp.* 60 F.3d 213, 217 (5th Cir.1995) and *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995)).

**2.** Here, there is no dispute that the amount in controversy exceeds $75,000.

**3.** The citizenship of the Unnamed Defendants is not relevant for removal purposes. *See* 28 U.S.C.A. § 1441(a) (West 1994) (stating that for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded.").

**4.** Notwithstanding its moniker, the fraudulent joinder doctrine applies to the misguided joinder as well as to the truly fraudulent. *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir.1992) ("When speaking of jurisdiction, 'fraudulent' is a term of art. . . . Although false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives.") (citations omitted).

"The question, then, is simply whether the defendant can show that no possibility exists that the plaintiffs have stated a claim against [the non-diverse defendant]." *Id.* Finally, a court must examine the plaintiff's factual contentions in a light most favorable to the plaintiff and resolve all factual disputes in the plaintiff's favor, *see id.,* and may "pierce the pleadings" and rely on affidavits or other documents to determine whether the party was fraudulently joined. *See LeJeune v. Shell Oil Co.,* 950 F.2d 267, 271 (5th Cir.1992).

■ In the present case, Defendants do not allege fraud. The question, then, is simply whether Defendants can show that no possibility exists that Plaintiff has stated a medical malpractice claim against Dr. McGee. In order to recover under the theory of medical malpractice, plaintiff must establish the following essential elements: (1) a legally cognizable duty requiring the physician to conform to a certain standard of care or conduct; (2) the applicable standard of care and a breach of that standard; (3) injury; and (4) a reasonably close causal connection between the breach of the standard and the injury suffered by the plaintiff. *Wheeler v. Yettie Kersting Mem'l Hosp.,* 866 S.W.2d 32, 37 (Tex.App.—Houston [1st Dist.] 1993, no writ). The standard of care in Texas mandates that a "physician has [a] duty to act as would a physician of reasonable and ordinary prudence under the same or similar circumstances." *Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex.1993). Furthermore, under Texas law, a physician assumes the duty to warn the patient of dangers associated with a particular prescribed drug. *Morgan v. Wal–Mart Stores, Inc.,* 30 S.W.3d 455, 462 (Tex. App.—Austin 2000, pet. denied); *see also Reyes v. Wyeth Labs.,* 498 F.2d 1264, 1276 (5th Cir.1974) (stating that a manufacturer has a duty to adequately warn a doctor, and that a doctor acts as a learned intermediary between the manufacturer and the patient).

■ Plaintiff alleges that, while he was under the care of the Defendant Doctor, the doctor prescribed Rezulin and as a result of taking Rezulin, Plaintiff developed liver damage. Plaintiff alleges that Dr. McGee was negligent in failing to warn Plaintiff of the risks linked to Rezulin and in failing to test and monitor Plaintiff's liver functions. Plaintiff further alleges that Dr. McGee was negligent in continuing to prescribe Rezulin to him.

In support of his Motion to Remand, Plaintiff submitted evidence regarding the reasonable standard of care and demonstrating that the Defendant Doctor knew or should have known of the harmful effects of Rezulin. For instance, in 1997, the Pharmaceutical Defendants sent two letters to physicians warning physicians of potential injuries which may be caused by Rezulin. The first letter, entitled "Important Drug Warning," warned doctors of the "the incidence of idiosyncratic hepatoecellare injury in patients with Type 2 diabetes being treated with Rezulin" and advised doctors to obtain liver function tests on their patients. In the second letter, the Pharmaceutical Defendants continued to express the need "for monitoring of liver function with patients taking the drug" and further explained that the Rezulin label was changed to include a warning regarding Rezulin. In fact, the Rezulin label was changed to include a warning regarding incidents of liver failure and to add testing recommendations.

The Court is of the opinion that Plaintiff's allegations and the evidence submitted in support of his Motion undeniably demonstrate a viable medical malpractice cause of action against the Doctor Defendant. Thus, the Pharmaceutical Defendants have the heavy burden of showing that Plaintiff has no possibility of recovery

against the Doctor Defendant. To this end, the Pharmaceutical Defendants, citing *In re Rezulin Prods. Liab. Litig.*, 133 F.Supp.2d 272 (S.D.N.Y.2001) (hereinafter *"Rezulin I"*), argue that Plaintiff's allegations against the Pharmaceutical Defendants that they concealed the alleged risks of Rezulin from physicians, completely refutes his allegations that the physician knew or "should have known that plaintiff could not tolerate Rezulin." The Court disagrees.

First, when a plaintiff sues multiple defendants, it is common that some of the allegations may be inconsistent. *Ritchie*, 2001 WL 527501, at *2. Second, Defendants reliance on *Rezulin I* is misplaced. In *Rezulin I*, the MDL Court held that the plaintiff "did not come close" to stating a cause of action against the physician defendant. *Rezulin I*, 133 F.Supp.2d at 295. *See also Rezulin Prods. Liab. Litig. (MDL No. 1348)*, No. 00 Civ. 2843, 2002 WL 548750, at *2 (S.D.N.Y. April 12, 2002) (stating that, in its prior decision (*Rezulin I*), the only mention of the nondiverse physician was in the caption of the complaint). Here, Plaintiff has alleged with particularity causes of action against his treating physician and has shown, for purposes of considering these issues, that the Defendant Doctor knew or should have known of the harmful effects of Rezulin.

▉ Finally, the Court finds that recent decisions issued by the MDL Court mandates that remand is appropriate in this action. *See In re Rezulin Prods. Liab. Litig. (MDL No. 1348)*, 2002 WL 548750 (S.D.N.Y. April 12, 2002) (hereinafter *"Rezulin II"*); *In re Rezulin Prods. Liab. Litig.*, 168 F.Supp.2d 136 (S.D.N.Y. 2001) (hereinafter *"Rezulin III"*). In *Rezulin II*, the plaintiff's, citizens of Mississippi, sued the manufacturers of Rezulin as well as Mississippi doctors for injuries allegedly caused by Rezulin. 2002 WL 548750, at *1. The cases were removed to federal court by the manufacturer defendants on the basis of diversity of citizenship, and were then transferred to the MDL Court. *Id.* There, the court granted the plaintiff's motion to remand, finding that the plaintiffs had stated a medical negligence claim against the nondiverse doctor defendants by asserting that "the physicians had failed to alert the plaintiffs of the side effects of Rezulin of which they were aware and that they failed to secure the plaintiffs' informed consent and monitor their heart and liver function as the FDA recommended." *Id.* The MDL Court further found that the plaintiffs had also stated claims against the non-diverse doctors, rendering their citizenship material for diversity purposes, by alleging that the physicians had "treated them, prescribed Rezulin to them, and failed to inform them of the risks associated with Rezulin." *Id.* In *Rezulin III*, the MDL Court affirmed the possibility of stating a medical malpractice claim under Texas law against treating physicians. 168 F.Supp.2d at 150. In two Texas actions, the MDL Court found that the plaintiffs had properly joined the treating physicians, although the plaintiffs had failed to file expert reports as required by Texas Law. *Id.*

Thus, after due consideration, the Court is of the opinion that Plaintiff has demonstrated a viable medical malpractice claim against Dr. McGee. Hence, Dr. McGee was not fraudulently joined and diversity is not complete. The Court is, therefore, further of the opinion that remand is appropriate.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Ed Barragan's "Motion to Remand" is **GRANTED.**

**IT IS FURTHER ORDERED** that the instant case is **REMANDED** to the County Court at Law Number 7, from whence it came.

IT IS FINALLY ORDERED that all other pending Motions are **DENIED AS MOOT.**

SIGNED this 15th day of **May, 2002.**